Thank you, your honor. Are we ready to do it now? Yes, thank you. Please permit me to bid a very good morning to this honorable court and to present my son Bill who has worked with me tirelessly on this case. We have the honor of appearing for the appellate ESPITIA pursuant to appointment by this honorable court. And we would like to thank you for this pleasure and honor. Very briefly, we presented two very distinct facts to this honorable court this morning, rather issues. We submit that both are equally compelling. With regard, I want to be very, very brief because I know the court has certainly read our materials and we tried to be succinct there. With regard to the first issue, denial of counsel, submit that may alone be determinative in this matter without getting to the second issue. And certainly we believe that that issue can be resolved without referencing the AEDPA or at least that part that says the issue must be in violation of clearly established U.S. Supreme Court federal law. We submit very strongly with regard to the first issue that the district court and the state court prior, of course, overlooked the was a rain on the new information with severe substantive additions. The clock was reset. I guess that's the question is how much of a change the additions made. It's they added lesser included. Yes, they did. But I suppose those are incorporated. You're really whenever you're alleged a major crime, you're alleging the lesser included. I don't know that that does anything but adds sort of specific specificity to what already existed. You know, I'm not I'm not precisely sure that they're lesser included under the state law. But in any event, assuming that they are, which they most likely are, it didn't change the ballgame. What we're really stressing is the fact that the severe substantive additions amounted to the to the pleading of the strikes, the two strikes of prior convictions having operate, having worked in state court as a prosecutor. I know what happens. And I think it's very clear to the court to the filer information, the complaint to go to preliminary hearing. They file the information, then alleging the charges, in this case, carjacking. It gets up to trial and they don't allege the priors, which in this case put them away for life. I think it's 38 or 46 years of life. They don't allege the priors until the matter is go to trial like today. And, you know, if you're going to plead guilty, we'll make a deal. But otherwise, we're going to allege the priors against you, which will make you a three striker if you're convicted. The reason for that, of course, is so that the court, the state court and the prosecutor don't have to negotiate and bargain about striking the priors in order to get a reasonable plea bargain. I think that's been alleged. Pardon me? Had any priors been alleged in the original indictment? No, Your Honor. Not in the original information or complaint. Not information. No. It was not. And so when he's coming along without an attorney, and all of a sudden, you know, it's a new ballgame, like, oh, my God, you know, it's life. When did he get notice that they were going to allege the priors? It was, well, certainly on the day of trial. The court said, we're going to start trial today, we're going to allege the priors. I believe that the record does show that the previous evening, rather the previous afternoon, there was some colloquy in the court about we're going to go to trial tomorrow. I think it was the 10th day they had to go to trial. And we're going to go to trial tomorrow. And I think the prosecutor said, we're going to come up with, we're going to file the priors, which is, you know, again, what I've seen is common practice on the day of trial. Now, of course, the court could have done a number of things. The court could have said, look, this is the day it has to go to trial. Now, he did waive time. He did say, all right, he did it grudgingly. He said, fine, if I have to waive time, you know, to continue the case, I'll do that. How so did he waive time? Where is that in the record that he waived the time? I thought he did not waive the time. I believe, I believe what was, what he said was about continuing the case. Now, I don't think the court meant continuing with the case, but I think the court said on the day of trial about the, about the priors that he would agree to, do you agree to continue the case? And he said, I believe I was forced to do so. Was that, I believe I'm being forced to do so. The court was in a difficult position because without an unequivocal waiver, the court was faced with the speedy trial conundrum. Yes, the court was. And so absent an unequivocal waiver, the court had few options at that point, didn't it? Yes, Your Honor, the court had several options. Number one, the court could have said, look, to the prosecutor, you know, you've waited until the last day. This case is how many months or, you know, oh, we're not going to allow you to allege the priors at this point. We're going to go on the original information. But the court, are you saying the court was compelled to do that by the Constitution? That's the issue we're looking at. Of course, under state law, they had to go to trial on that day. It was the 10th of, you know, 10 days, 60 days plus 10. They had to go to trial on that day unless there's some other way around it. One of the ways was simply to dismiss the case and to then refile the case. Under the Constitution, we believe that the Constitution, Sixth Amendment and 14th, require that at this juncture, that Mr. Aspicia be able to exercise his right to an attorney. Now, we all, and to have an attorney, we all know what courts, the dread that the courts and the prosecutors go through when there's a pro per appearing anywhere, especially in a felony trial, is, oh, my God. But certainly the court prior to this had, you know, taken exceptional, had gone through exceptional colloquy with the defendant about, you know, we want an attorney. No, no, no. Because I feel I could do a better job. But then when he's faced with life, 36, I believe it was, years to life, it was a totally different ballgame. And it was an arraignment. And according to the U.S. Supreme Court constitutionally, he's certainly entitled, under the cases we cited, he's entitled to attorney at every critical stage of the prosecution, especially the arraignment. Pardon me, ma'am. Mr. Melcher, I want to go back and revisit whether or not priors were alleged prior to the trial. It was my understanding when I came in this morning that priors were alleged prior to the day of trial. And what happened on the day of trial was that additional priors had been added. And I called your attention to the magistrate judge's opinion on page 9, where he lists what happened at the preliminary hearing held on November 18, 1996. Magistrate judge says, the court explained that petitioner was facing a serious charge, that he had three strikes, and that he would receive 25 years to life if convicted. Now, that tells me that the trial judge was aware of some priors. Would he have been aware of those if they had not been pled originally? Your Honor, according — they were pled in the information, of course. They were pled in the — But you just told us they weren't added until the day of trial. They were. It's our understanding, I believe it's very clear from the record, that on the day of trial, the court alleged the priors. Not the court. The prosecutor sought to allege the priors, and the court permitted the allegation of the priors, which made him a — Well, then how did the court know in November that there were three strikes involved? I don't know how the court knew it, but they weren't pled. They weren't pled in the complaint, the original felony complaint, and they weren't pled in the original information. That's why the new information on April 26 or whatever it was, April 8, 1997, that's why they were — that's why they were — not re-alleged, that's why they were alleged at that time. It was on that day, Your Honor, that the prosecutor sought permission to file an amended information alleging the priors. Counsel, I'm intrigued by your statement earlier in your argument that EDPA does not apply. Is that your position? No, Your Honor. I must have glossed over that. We were only, of course, talking about the first issue. Right. Certainly, AEDPA — there's implications on the second issue about the legal — Why aren't there implications on the first issue? Well, there are. There are, Your Honor. I think AEDPA certainly applies. We have to look to it on a habeas case, and we have to determine what is clearly established U.S. Supreme Court federal law. There's no doubt that. But we believe — we believe that under the — under the very, very basic cases about the right to counsel in the Sixth Amendment, that it's very clearly established that a person has a right to counsel. Well, Counsel, wouldn't you agree, though, that the issue in this case is at what point a previously pro se person can assert the right to counsel? Yes, Your Honor, most definitely. Okay. And if we look at some of the cases that we cited, Townsend v. Blake, which is a 1948 case, U.S. Supreme Court, he wasn't given an attorney — he wasn't permitted to have an attorney at sentencing. Now, you know, the presumption was — Previously pro se? Yes, he was. I think Townsend v. Blake, U.S. Supreme Court, 1948, we cited on page 20 of our AOB. There, he had — just a second. Was that the case where — he wasn't pro se, was he? Yeah. It's our understanding that he was pro se originally, and he got to the point of sentencing, and he wanted an attorney at sentencing, and he wasn't given an attorney. We look at Mempa v. Ray. Again, he pled — I'm terribly sorry, Your Honor. On Townsend v. Burke, he pled guilty. There was no trial. It was a plea of guilty, and at the sentencing, he was not permitted the right to have an attorney. Mempa v. Ray, again, we cited that on page 20, 1967 U.S. Supreme Court case. Again, he pled guilty. He had an attorney. He pled guilty and — with an attorney, and there was a probation violation hearing thereafter scheduled, and he was not permitted to have an attorney at that time. Again — Okay. Thank you. Your time — you've expired. Oh, yes, we certainly have. We will give you one minute for rebuttal, though. Thank you, Your Honor. Thank you for taking the time. May it please the Court, Christine Shum from the California Attorney General's Office, counsel for the appellee. First, I'd like to just make clear that this case is very well covered under the AEDPA. It's a habeas petition. It's a federal habeas matter. It was filed after the AEDPA was enacted, so — Well, I don't see any dispute about that. I think the opposing counsel was just simply saying there are Supreme Court cases that apply. Well, Your Honor, I would disagree with that. There aren't any controlling U.S. Supreme Court cases. They cite Hamilton v. Alabama, and they also cite Mempa v. Ray, but those cases aren't applicable to the incident case. They aren't controlling U.S. Supreme Court authority on the issue of whether or not a — on the issue of a counsel after repeated assertions of — Suppose it's always true that when you look to see whether there's a controlling Supreme Court case, you can manipulate the level of specificity so that there never is one or there always is one. It just depends at what level of generality you want to pose the present problem. I suppose there's nothing about when there's been a waiver of counsel, and now counsel is requested before trial. There's no case exactly like that from the Supreme Court, I guess, but there certainly are ones after trial. Well, I think that the closest that we would come to that would be Feretta, which indicates as to when the right for — the right to choose between self-representation and representation is an unqualified right, and it doesn't go or become out of the trial court's discretion. I believe Feretta would come closest to that, Your Honor. But if I may just go back to Hamilton and Memphis, just to distinguish those two cases from the incident case. In Hamilton, what we're dealing with here is an arraignment on the charges for the first time. In the incident case, what we have is essentially it's a mere formality. It's a rearrangement on an amended information which didn't really differ from the original information. The prior offenses were alleged. They were clearly alleged in the original information that was filed on 12497. Do you have a record citation for that? I sure do, Your Honor. That's at the clerk's transcripts, page four to six. What about the excerpts of record? Your Honor, I don't recall if those clerk's transcripts pages are in the excerpts of record. If they're not, I can certainly provide copies of those to the court after oral argument. I believe that they would be... That's a big fact dispute between your opponent and you this morning, as to whether or not those priors were alleged originally. Right. Well, yes, I didn't anticipate that because I believe the information is very clear as to that. And I think that also the amended information, it didn't really differ from the original information. What it did was add... It didn't add... It did not add any additional strikes or anything? Your Honor, what happened in the amended information was it did add two prior offenses, but the prior offenses were two robbery convictions that were essentially repeated. So what happened was the prior offenses consisted of two robberies and one rape by force and one possession of controlled substance for sale. What happened was the two robbery convictions that were originally alleged, those paragraphs were repeated as the fourth and fifth prior offenses. And those were stricken at the prosecution's motion. And that's also apparent in the record, and that's at excerpts of records, page 55. So what prior was added by the amendment? The amended, nothing other than those two paragraphs of the two repeated robbery convictions. They had already been alleged before, is that correct? Exactly. And it's the exact same date. Everything's exactly the same. And so then, in effect, there were no additional priors alleged by the amended information. Exactly. And so then we're left with whether or not the assertion of the LIOs, lesser included offenses, constituted a material change in the charge. Yes, Your Honor. And what's your position on that? That they didn't material... They didn't change the original information materially, because they were lesser included offenses. And the language that's written in the amended information as to each of the crimes, the carjacking, the robbery, and the auto theft, it's very clear that the robbery and the auto theft, those were the two lesser included offenses, that their language is entirely subsumed by the carjacking language. So those two are lesser included offenses. And Mr. Asfiti did not have to contend with any new facts. He didn't have to contend with any new scenario. He was dealing with exact same facts. Unless the Court has other questions, I wonder if you could say something about the access to the jail library. If I understand the briefs, the only access he got was four hours after the close of evidence. Is that correct? Yes, Your Honor. That is my understanding of the record. And I'd be more than happy to address that issue. It is our position that under that claim, the denial of access to the law library, there is also no clearly established Supreme Court authority by which the State Court's adjudication on the claim could be said to be contrary to an unreasonable application of. There is a clear in the authority, in circuit authority, and equivocally, that would demonstrate that there is no clearly established Supreme Court authority. And therefore, Mr. Asfiti would not be entitled to habeas relief for that claim either. There's a split in that some circuits have taken the position that you can give somebody a right to self-representation and then deny totally all access to legal materials. Is that? Yes, Your Honor. It would be the Fourth Circuit, the Sixth Circuit, the Seventh Circuit, and the Tenth Circuit. Well, what about this circuit's 2000 case in Brabiska v. Galazza? Your Honor, I'm... Remember that one? Unfortunately, I'm not familiar with that case. Well, it's found at 215 Fed 3rd, 1015. And there, this circuit held post-EDPA that an incarcerated criminal defendant who chooses to represent himself has a constitutional right to access to law books and other tools to assist in preparing a defense. Your Honor, that may be, and that would be the position of the Ninth Circuit, but it would be our position that under Arradondo v. Ortiz, that it is not this, with all due respect to this Court, it is not this circuit's, it is not circuit authority by which we review a habeas matter. It would be the clearly established U.S. Supreme Court authority. But the second point that I would like to mention is that... Well, I think if you look at that case, you'll see that Judge Fletcher bottomed it on Feretta. Well, Your Honor, I, going back to Feretta, I believe that, I don't believe that there's any language in Feretta that would specifically say that a pro per, or a criminal defendant who is acting on his own, in pro per, that the right to self-representation extends or includes or mandates a certain amount of time in the law library. But counsel, you... I might agree with you as an original matter, but I think this 2000 case from this circuit finds this panel's hand. Well, Your Honor, I would respectfully submit to this Court that under Arradondo v. Ortiz, under the limited review under AEDPA, that this, that the case that you just cited would not come into the analysis of that claim, Your Honor. But however, if I may, I'd like... Counsel, doesn't our case law say that we may look to our precedent in determining what is a clearly established federal law? Although the Supreme Court is the law we are bound by, we can look to our law in determining what the Supreme Court law is, can't we? Well, Your Honor, I believe that my recollection would... And yes, my recollection does recall that there is case law that may say that, but I would again urge this Court that under the AEDPA, the standards, it's a very limited review and it is against clearly established US Supreme Court authority. And Feretta, the right to self-representation, I don't believe that there is language in that case that mandates a certain number of hours in the law library for a defendant who is acting in pro per. How about no hours? Pre-trial, there was no access to the law library. Are you saying that's not a violation of a constitutional right? Well, no, Your Honor. What I am saying is that in the context of a federal habeas review, there isn't case law that does, that says that or that mandates that. All right, are you... Then you're saying that the three or four circuits that have held that way are wrong? Because there are three or four circuits who have held that a pro se defendant gives up the right to the law library when he's a go-pro se. He's got a choice. He either takes counsel, which gives him the law, or if he rejects counsel, then he's on his own and he has no right of access. There are three or four circuits that have held that. Right. No right or wrong. Well, Your Honor, I think that, no, I believe that those circuits are the ones that we cited in our briefing to show that there is a split in the circuit authority. And within the context of a federal habeas review, I think it's simple. I think what it shows is, what those circuit authority shows, is that there is disagreement among the circuits. Well, your purpose is here this morning. You don't have to decide whether or not they're right or wrong. You just have to show that there's no Supreme Court authority, or at least there's a split among the circuits. Exactly, Your Honor. Right. Yeah, exactly. And to the extent that the relief that Mr. Spiegel is seeking, which is an extension of the Feretta right, he can, he could do that directly on, he could have done that on direct appeal. But in here, in this matter, in a federal habeas context, that is exactly what I'm saying, which is that there simply is, there is a split in the circuit authority, which unequivocally establishes that there is no clearly established U.S. Supreme Court authority on that matter. All right. Thank you, counsel. You've exceeded your time. Thank you, Your Honor. We'll give you one minute for rebuttal, counsel. Thank you, Your Honor, and thank you, Ms. Shum. I just wanted to point out that this new arraignment, at the time he was arraigned with, which we contend at that point that the priors were alleged for the first time, the strikes were alleged for the first time, even the trial judge at that time said, Mr. Fisher, you're entitled, you know, he arraigned him on the new information and advised him at that time that he had a right to an attorney. And he said, I want an attorney. And the judge said, you're too late. You were sent down here for trial as a pro se. Mr. Falcher, do you still make the representation of this Court that the priors were not alleged in the original information? Yes, Your Honor. Very well. The other thing about Feretta, we're not asking the Court to extend Feretta, and we don't believe that the Court, that the Ninth Circuit had ever extended Feretta in Milton v. Morris or otherwise. Somebody has to take a look at it. Now, the Court could, I think at this point, take a look de novo at Feretta and say, what does Feretta mean? Now, the Court doesn't have to do that necessarily, because the Court can look to earlier opinions by the same Court and say, well, we don't know what it means necessarily, but take a look. Milton v. Morris, you know, says the following, and, you know, very, very clearly is not on all fours. No case is, but. Counsel, the fact that there is a split among the circuits on this issue, doesn't that indicate there is no clearly established federal law? No, Your Honor. I think that there's different opinions as to what that may be, but we think that this Court, having looked at it in Milton v. Morris, et cetera, is the persuasive authority. I think we don't need to look outside this circuit, especially. Well, let's look within this circuit. Let's look at United States v. Wilson, 690 Fed Second 1267 at 1271. You'll find this quotation, nowhere did the Feretta Court suggest that the Sixth Amendment right to self-representation implies further rights to materials, facilities, or investigative or educational resources that might aid self-representation. Yes, Your Honor. Now, as I, I'm an outsider here, but I see a 1982 decision from this Court saying Feretta doesn't say a word about law library access. And then Wilson says, dependents have a right to it. Now, am I free to choose which line of Ninth Circuit authority I want to abide by? I think the Court can hold all of these to be persuasive, but we believe that Milton Morris v. Morris, again, talked very, very clearly to this direct point, didn't extend Feretta to 1985 case by this circuit. And I think the key language in Feretta is the right to put on a, to present a defense, a legal defense as we know it. Not simply stand there and say I'm not guilty, but, you know, we know as attorneys, as judges, we know what a defense is. Maybe some other people, you know, need some guidance. We know what a good defense is. And it doesn't have to be a good defense, it has to be a defense. And I think that's what Feretta says. And Milton v. Morris does not extend that. All right. Thank you, counsel. Thank you. Thank you so much. Thank you to both counsel for the argument on this case. The case just argued is submitted for a decision by the court. The next two cases, Coleman v. Terhune and Tatarinoff v. Superior Court of State of California have been submitted on the briefs. The next case on calendar for argument is United States v. John. Good morning, Your Honors. Good morning.
judges: Canby, Hansen, Rawlinson